UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ANDRE ZAGREBELNY, et al., CIVIL NO. 07-1682 (PAM/JSM)

Plaintiffs,

v. REPORT AND RECOMMENDATION

DENISE FRAZIER, et al.,

Defendants.

JANIE S. MAYERON, U.S. Magistrate Judge

The above matter came before the undersigned upon defendants' Motion to Dismiss [Docket No. 11]. Marc Prokosch, Esq. appeared on behalf of plaintiffs. Friedrich A. P. Siekert, Esq. appeared on behalf of defendants. The matter was referred to the undersigned by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b)(1)(B).

Based upon the pleadings and the pre-hearing submissions, it is recommended that the defendants' Motion to Dismiss [Docket No. 11] be DENIED.

## I. FACTUAL BACKGROUND

Plaintiffs bring this action against Denise Frazier, Field Office District Director, United States Citizenship and Immigration Services; Emilio T. Gonzalez, Director, United States Citizenship and Immigration Services; and Robert S. Mueller, Director, Federal Bureau of Investigation, seeking a writ of mandamus compelling defendants to adjudicate their applications for naturalization.

Plaintiff Andrey Zagrebelny is from the former Soviet Union. He filed an N-400 application for naturalization on or about December 27, 2005, and was interviewed on

or about May 4, 2006. Complaint, ¶ 8. Plaintiff Jia Zhou is from China. He filed the N-400 application for naturalization on or about December 12, 2005, and was interviewed on or about April 24, 2006. Id., ¶ 10. Plaintiff Dai Wei Zhang is from China. He filed his N-400 application on or about March 11, 2005, and was interviewed on June 5, 2006. Id., ¶ 12. Plaintiff Yun Wen Zhang is from China. He filed his N-400 application on or about March 11, 2005, and was interviewed on June 5, 2006. Id., ¶ 13. Plaintiff Sumaia Ali is from Iraq. She filed an N-400 application on or about January 24, 2005, and was interviewed on January 4, 2006. Id., ¶ 14. Plaintiff Zuhair Abudaya is from Jordan. He filed his N-400 application on October 31, 2005, and was interviewed on or about March 20, 2006. Id., ¶ 15. All plaintiffs passed their English language and Government examinations, and all have been given notice that they could not be recommended for final approval because their security checks were not complete. Id., ¶¶ 8-15.[1]

Since their interviews, plaintiffs have made written inquiries to the Department of Homeland Security, made Infopass appointments at the local district office to inquire about the status of their cases, written to their Congressional representatives, their Senators and to other various government officials, and have filed Freedom of Information Act requests. Id., ¶ 18. As a result of the delay in the processing of their applications, plaintiffs have been unable to move forward with their lives, have lost job opportunities, been deprived of their peace of mind, and the benefits, rights and protects to which they would be entitled as United States citizens. Id., ¶ 20.

---

[1] Former plaintiffs Ahmed Suldan and Ismail Moalin have had their respective applications adjudicated during the pendency of this litigation, and have been dismissed from this case. See Docket Nos. 9, 21.

Plaintiffs allege that while neither the Immigration and Nationality Act nor its regulations provide a mandatory timeframe in which security clearances must be completed, 8 C.F.R. § 335.3 requires that once an applicant for naturalization has been interviewed, the decision to grant or deny the application shall be made within 120 days. Id., ¶ 23. More than 120 days have passed since each plaintiff was interviewed. Id. Therefore, plaintiffs seek an order compelling defendants and those acting under them to complete the required background checks and security clearances and to adjudicate plaintiffs' applications for naturalization. Id., p. 8.

Defendants now bring the current motion to dismiss based on lack of subject matter jurisdiction.

## II. STANDARD OF REVIEW

A motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) may challenge the plaintiff's complaint either on its face or on the factual truthfulness of its averments. See Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); see also Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir. 1990). In a facial challenge to jurisdiction, the court restricts its review to the pleadings and affords the non-moving party the same protections that it would receive under a Rule 12(b)(6) motion to dismiss. See Osborn, 918 F.2d at 729 n. 6. The court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction. See Titus, 4 F.3d at 593 (citing Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 731-32 (11th Cir. 1982)); Osborn, 918 F.2d at 729 n. 6.

In a factual challenge to jurisdiction, the court may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6). See Titus, 4 F.3d 590 at 593; Osborn, 918 F.2d at 729 n.6. "In short, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." Osborn, 918 F.2d at 730 (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F. 2d 884, 891 (3rd Cir. 1977)).

Here, as the parties are relying on facts extrinsic to the Complaint, the Court will treat defendants' motion as a factual challenge to jurisdiction. See Sawad v. Frazier, 2007 WL 2973833 at *1 (D.Minn. Oct. 9, 2007) (J. Doty) ("When a party moves to dismiss an action for lack of subject matter jurisdiction under Rule 12(b)(1), the court may consider matters extrinsic to the allegations in the complaint without converting the proceedings to a Rule 56 summary judgment action because the court is 'free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" (citing Osborn, 918 F.2d at 729-30)).

## III. ANALYSIS

Plaintiffs allege that the Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1331 (federal question statute),[2] 28 U.S.C. § 1361 (Mandamus Act), and 5 U.S.C. §§

---

[2] Defendants correctly argue that the federal question statute does not, in itself, provide subject matter jurisdiction. However, subject matter jurisdiction under the APA does arise under the federal question statute. Califano v. Sanders, 430 U.S. 99, 108 (1977); see also Sabhari v. Reno, 197 F.3d 938, 943 (8th Cir. 1999) ("[I]f § 1331 is to be used to secure relief against the United States, it must be tied to some additional authority which waives the government's sovereign immunity. Such a waiver may be found in the Administrative Procedure Act.").

551 et seq. and 701 et seq. (Administrative Procedures Act).[3] Complaint, ¶ 2. In lieu of an answer, defendants moved to dismiss plaintiffs' Complaint on the basis that the

---

3 In their opposition and at oral argument, plaintiffs stated that they were not seeking relief under 8 U.S.C. § 1447(b). See Pls. Mem., pp. 6, 9. Section 1447(b) provides:

> If there is a failure to make a determination under section 1446 [to grant or deny the naturalization application] of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

Plaintiffs stated their decision not to proceed under § 1447(b) was based on Essa v. United States Citizenship & Immigration Serv., 2005 WL 3440827 at *2 (D.Minn. Dec. 14, 2005), which they believed held that the 120-day period provided by § 1447(b) did not begin to run until background checks of the applicant had been completed. Pls. Mem., p. 6. Accordingly, since the background checks in this case had not yet been completed, plaintiffs instead based their suit on the mandamus statute and the APA.

The Court first observes that Essa held that the 120-day period ran from the date of petitioners' interviews, and not from the completion all aspects of the examination process, including the FBI's background check. See Essa 2005 WL 3440827 at *2, n. 2. The court then found that it, like the USCIS, could not adjudicate petitioners' naturalization applications because the background checks had not yet been completed. Id. Therefore, the court remanded petitioners' naturalization applications to USCIS "for prompt resolution." Id. at *3. Similarly, several other decisions from this district have concluded that pursuant to § 1447(b), federal courts have jurisdiction over a naturalization application 120 days after the date of the applicant's interview, even if the background check has not been completed. Additionally, in each case, the court remanded the matter back to the USCIS to complete the adjudication within certain time constraints. See Morral v. Gonzales, 2007 WL 4233069 (D.Minn. Nov. 28, 2007) (J. Kyle); Karar v. Frazier, 2007 WL 3023327 (D.Minn. Oct. 12, 2007) (J. Frank); Farbakhsh v. U.S. Citizenship and Immigration, 2007 WL 2908167 (D.Minn. Oct. 1, 2007); Repeshchuk v. Gonzales, 2007 WL 2361450 (D.Minn. Aug. 15, 2007) (J. Kyle); Eisa v. U,S. Citizenship and Immigration Services, et. al., Civ. No. 05-773 (J. Kyle) (Order dated January 31, 2006 adopting Report and Recommendation of Magistrate Judge Arthur Boylan dated December 23, 2005).

Despite plaintiffs' statement that they were not asserting jurisdiction under § 1447(b), defendants prophylactically argued that the Court does not have jurisdiction under §

Court lacks subject matter jurisdiction over the action because (1) none of the statutes upon which plaintiffs rely contain the requisite waiver of sovereign immunity or confer subject matter jurisdiction, (2) the action is not ripe for review because the required background and security checks have not been completed, and 3) plaintiffs have not exhausted their administrative remedies. Defs. Mem., pp. 2-3. In response to plaintiffs' claim for relief under the Mandamus Act, defendants specifically argued that mandamus

---

1447(b) because plaintiffs have not undergone their initial examinations. Defs. Mem., p. 37. Defendants contended that the term "examination" includes the entire process of interviews and background checks, and that since the background checks for plaintiffs has not been completed, the initial examination has not been completed and § 1447(b) has not yet been triggered. Id. In support of their position, defendants relied upon the Fifth Circuit's holding in Walji v. Gonzales, which found that the 120-day time period did not begin to run until USCIS receives the FBI's definitive response. 2007 WL 1747911 (5th Cir. 2007). Defendants' reliance on Walji is misplaced. On September 14, 2007, four days after the hearing on the instant case, the Fifth Circuit reversed itself on rehearing and withdrew its opinion. See Walji v. Gonzales, 500 F.3d 432, 436 (5th Cir. 2007). In its reversal, the Fifth Circuit specifically held that held that term "examination" refers to the agency's initial interview of applicant, not to the entire investigative process including FBI's security check of the applicant, stating "[w]e agree…that a thorough reading of 8 C.F.R. § 335.2 reveals that the regulation 'can only be understood as equating 'examination' with the 'interview' conducted by the Service officer.'" Id. at 436 (quoting El-Daour v. Chertoff, 417 F.Supp2d 679, 683 (W.D.Pa. 2005)). Defendants' argument is therefore not only at odds with the Fifth Circuit's opinion in Walji, but with the decisions in this district which have held that the "initial examination" occurs at the time of the applicant's interview. See e.g. Karar, 2007 WL 3023327 at *3 ("the regulations treat the FBI background check as a separate event from the 'examination.'"); Repeshchuk, 2007 WL 2361450 at *3 ("the term 'examination' is equivalent to 'interview' and is wholly distinct from the background check conducted pursuant to CIS's 'investigation.'"). Here, it is undisputed that plaintiffs have been waiting in excess of 120 days since the dates of their respective interviews.

Nevertheless, while this Court believes it would enjoy jurisdiction over the present matter under § 1447(b), despite the status of plaintiffs' background checks, a complaint must specifically identify the basis for subject matter jurisdiction, and a court cannot create jurisdiction where it has not been pled. See Chaudry v. Chertoff, 2006 WL 2670051 at *2 (D.Minn. Sept. 18, 2006) (citing Wahrman v. Wahrman, 94 F.3d 649 (Table) (8th Cir. 1996). Therefore, given that plaintiffs did not allege § 1447(b) as a basis for jurisdiction, the Court must proceed with its analysis of plaintiffs' claims under the Mandamus Act and APA.

is inappropriate because § 1361 does not constitute a waiver of sovereign immunity, plaintiffs do not have a clear right to adjudication of their applications within a specific time frame, plaintiffs seek to compel discretionary action, and plaintiffs have an adequate alternative remedy, which is to wait until their applications are adjudicated. Defs. Mem., pp. 21-24. With respect to plaintiffs' claim under the APA, defendants maintained that Congress precluded judicial review by mandating the completion of the background checks, the APA precludes judicial review of agency actions committed to the discretion of the agency, there has been no final agency action, and plaintiff has an adequate remedy. Id., p. 28. For all of the reasons set forth below, this Court rejects defendants' contentions and concludes that it has jurisdiction over plaintiffs' suit.

**A. Sovereign Immunity**

Defendants maintain that this Court lacks jurisdiction to entertain plaintiffs' suit because sovereign immunity has not been expressly waived, and the Mandamus Act does not constitute a waiver of sovereign immunity. Defs. Mem., pp. 15-16, 18-19. However, as defendants concede, there is a narrow exception to the sovereign immunity bar under the Mandamus Act, and that is, if the plaintiff is seeking "a writ of mandamus to force a public official to perform a clearly nondiscretionary, ministerial duty imposed upon him in his official capacity." Id., pp. 20, citing Dugan v. Rank, 372 U.S. 609, 621-22 (1963); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682 (1949); Washington Legal Foundation v U.S. Sentencing Comm'n, 89 F.3d 897, 901 (D.C.Cir. 1996); Marquez-Ramos v. Reno, 69 F.3d 477, 478 (10th Cir. 1995). In short, pursuant to the Larson-Dugan exception, "[i]f a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity, . . . no

separate waiver of sovereign immunity is needed." Washington Legal Foundation, 89 F.3d at 901.

Such is the case here. Plaintiffs are not seeking to compel the United States to take action; by this suit they are asking this Court to force the individual defendants in their official capacities to perform a nondiscretionary duty imposed upon them. Thus, the outcome of defendants' challenge to subject matter jurisdiction over plaintiffs' Complaint rises and falls with the determination of whether the defendants have a nondiscretionary duty to adjudicate plaintiffs' applications for naturalization within a particular or reasonable period of time, and whether plaintiffs meet the other requirements or conditions of the Mandamus Act and APA to invoke their relief.

**B. The Mandamus Act and APA**

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of mandamus is appropriate only where "(1) the petitioner can establish a clear and indisputable right to the relief sought, (2) the defendant has a nondiscretionary duty to honor that right, and (3) the petitioner has no other adequate remedy." Castillo v. Ridge, 445 F.3d 1057, 1060-61 (8th Cir. 2006) (citations omitted).

The APA requires that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Further, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review

thereof." 5 U.S.C. § 702. "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. When judicial review is proper, "[t]he reviewing court shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706. However, the APA does not apply where (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law. 5 U.S.C. § 701(a).

As a preliminary matter, this Court finds, as have other courts, that analysis of jurisdiction and relief under the Mandamus Act and APA is coextensive, and that there is no need to perform a separate analysis under the two acts. See Sun v. Chertoff, 2007 WL 2907993 at *3, n. 7 (D.Minn. Oct. 1, 2007) (J. Doty) (citations omitted).

Here, the action sought to be compelled is not discretionary, and USCIS regulations make it clear that defendants have a duty to adjudicate applications for naturalization. 8 C.F.R. § 316.14(b)(1) states that "[s]ubject to supervisory review, the employee of the Service who conducts the examination…shall determine whether to grant or deny the application, and shall provide reasons for the determination, as required under section 335(d) of the Act." (emphasis added). See also Kaplan v. Chertoff, 481 F.Supp.2d 370, 399 (E.D.Pa. 2007) (holding that the use of mandatory rather than permissive language in § 316.14(b)(1) supports the conclusion that USCIS has a mandatory, non-discretionary obligation to adjudicate applications); Costa v. Chertoff, 2007 WL 4456218 at *3 (E.D.Pa. Dec. 11, 2007) (USCIS has a non-discretionary duty to adjudicate applications); Assadzadeh v. Mueller, 2007 WL 3252771 at 2 (E.D.Pa. Oct. 31, 2007) ("Processing of [naturalization] applications is a mandatory duty." (citations omitted)). In fact, defendants concede that "the FBI is

obliged to complete background checks and the USCIS has an obligation to adjudicate the naturalization application." Defs. Mem., p. 30.

Moreover, the USCIS regulations dictate that the decision to grant or deny the application must be made within 120 days after the date of the initial examination of the applicant. 8 C.F.R. § 335.3(a) states:

> The Service officer shall grant the application if the applicant has complied with all requirements for naturalization under this chapter. A decision to grant or deny the application shall be made at the time of the initial examination or within 120-days after the date of the initial examination of the applicant for naturalization under § 335.2. The applicant shall be notified that the application has been granted or denied and, if the application has been granted, of the procedures to be followed for the administration of the oath of allegiance pursuant to part 337 of this chapter.

Id. (emphasis added).

Thus, as the examination of each of the plaintiffs has already been conducted, defendants had a nondiscretionary duty to adjudicate their naturalization applications within 120 days of the interview. In short, the Court finds that Congress, through its enactment of 8 U.S.C. § 1447(b), and USCIS, through its implementing regulations, have dictated that 120 days is the reasonable amount of time for USCIS to act on an application for naturalization, and at that point, if the USCIS has not made a decision, judicial intervention is warranted, whether it be pursuant to 8 U.S.C. § 1447(b), the Mandamus Act or the APA.

It is for this same reason that this Court rejects defendants' suggestion that there can be no mandamus relief because "Congress has precluded judicial review at this juncture by mandating the completion of the mandatory background and security checks," as "the completion of background checks are unequivocally within the

discretion of the FBI and the USCIS." Def. Mem., pp. 28-29. First, as defendants well know, there is no statute or regulation, nor anything about the statutory or regulatory scheme, which explicitly precludes judicial review of the timing of the mandatory background checks by the FBI or USCIS. Second, neither the FBI nor the USCIS have unfettered discretion to complete background checks. As defendants admit, (Defs. Mem., p. 30), and the cases hold, these agencies have a nondiscretionary duty to complete these checks and to adjudicate the applications.[4] Nevertheless, defendants

---

[4] On the one hand, defendants admit that the "the FBI is obliged to complete background checks and the USCIS has an obligation to adjudicate the naturalization application." Defs. Mem., p. 30. On the other hand, they state:

> Clearly, the investigative functions of the FBI in law enforcement, counter-intelligence, and national security are and must be discretionary. The FBI simply is not subject to a mandamus action to compel the expediting of an ongoing investigation.

Defs. Mem., p. 22. These statements find no support in the law. The role of the FBI in the USCIS naturalization process, a role which is mandated by Congress and the implementing regulations, imposes on the FBI a mandatory, non-discretionary duty to complete the background checks, and as such, subjects it, like the USCIS, to judicial review. The following reasoning is persuasive on this point:

> I conclude that the FBI has a mandatory duty to complete its background check within a reasonable time even though that duty is not expressly stated in a statute. Such a duty must follow from the 1997 funding legislation and the implementing regulations which injected the FBI into the naturalization process by requiring that the FBI conduct a full criminal background check of a naturalization applicant before the USCIS can complete its adjudication of the application. Pub.L. 105-119, 111 Stat. 2440, 2448-49, Title I, Nov. 26, 1997. This requirement is codified in 8 C.F.R. § 335.2(b). Other regulations require applicants to submit their fees to USCIS, which in turn provides a portion of the fees to the FBI to complete the fingerprint and name checks. 8 C.F.R § 334.2; 72 Fed.Reg. 4888, 4889 (proposed Feb. 1, 2007) (proposing increased fees for applicants based, in part, to "costs due to the FBI for background checks"). "[W]here Congress has conditioned CIS's mandatory action on the FBI's completion of background checks, and where applicants must pay the FBI, through CIS, to complete the background checks, the Court

would have this Court find that it is precluded from reviewing these agencies' failure to accomplish these name checks within any defined period of time because neither a statute nor the regulations dictate a time frame for completion of the checks. This reasoning flies in the face of the APA's requirement that the applications must be adjudicated in a reasonable time. See 5 U.S.C. § 555(b). It also ignores the fact that Congress, by affording naturalization applicants recourse to the courts under § 1447(b) if a determination is not made within 120 days of the naturalization examination, has provided "the court with a measure of what constitutes a reasonable period for INS to process naturalization applications." Sze v. Immigration and Naturalization Service, et al., 1997 WL 446236 at *7 (N.D.Cal. July 24, 1997). See also Alkenani v. Barrows, 356 F.Supp.2d 652, 656 (N.D.Tex. 2005) ("Although immigration officials are vested with broad discretion in making the ultimate decision whether to grant or deny an application for naturalization, they have a non-discretionary duty to process the application within a reasonable time."); Assadzadeh, 2007 WL 3252771 at *5 ("Because defendants have a non-discretionary duty to adjudicate naturalization applications and complete background checks, they must do so in a reasonable amount of time."); Sharawneh v. Gonzales, 2007 WL 2684250 at *4 (E.D.Pa. Sept. 10, 2007) ("…the USCIS has a mandatory, non-discretionary duty to adjudicate applications for naturalization, such as

---

> holds that Congress has, by implication, imposed on the FBI a mandatory duty to complete the background checks." Kaplan v. Chertoff, 481 F.Supp.2d 370, 401 (E.D.Pa.); see also Al Daraji v. Monica, 2007 WL 2994608 at *3-*5 (E.D.Pa.).

Moretazpour v. Chertoff, 2007 WL 4287363 (N.D.Cal. Dec. 5, 2007); see also Dawoud v. Department of Homeland Security, 2007 WL 4547863 at *6, n. 3 (N.D.Tex. Dec. 26, 2007) ("the manner in which Defendant USCIS conducts the required investigation into an applicant's moral character imposes a mandatory duty on Defendant FBI to conduct the background investigation").

plaintiff's, within a reasonable period of time"). In other words, the fact that neither a statute nor the implementing regulations provide for a time frame within which USCIS must conduct the examinations or the FBI must complete the background checks, does not lead to the conclusion that applicants have no recourse to the courts to determine if the delay in conducting the interview and completing the background checks is unreasonable. Having concluded that the USCIS has an affirmative, non-discretionary duty to process these applications and complete the background checks, the Court finds that the APA's requirement that the applications be processed in a reasonable time is subject to judicial review pursuant to 5 U.S.C. §§ 702, 704.[5]

---

[5] At the same time as courts around the country have been addressing suits involving delayed adjudications of naturalization applications due to the failure of the FBI to complete the name checks on a timely basis, courts have been addressing the same issue in the context of adjustment of status applications by persons seeking permanent residence in the United States. In those cases, unlike the naturalization cases, there is no statutory or regulatory requirement that application be adjudicated by USCIS within any specific time period. Nevertheless, many courts, including several within this district, have concluded that the USCIS's obligation to process applications is not discretionary and is reviewable by the court. See e.g. Asrani v. Chertoff, 2007 WL 3521366 at *3 (D.Minn. Nov. 14, 2007) (J. Tunheim) (USCIS has a duty to actually make a decision and the APA requires adjudication "within a reasonable time."); Sawad v. Frazier, 2007 WL 2973833 at *3 (D.Minn. Oct. 9, 2007) (J. Doty) ("plaintiffs have a clear, indisputable and nondiscretionary right to have USCIS adjudicate their applications in a reasonable time"); Sun v. Chertoff, 2007 WL 2907993 at *4 (D.Minn. Oct. 1, 2007) (J. Doty) ("Moreover, although § 1255 and its implementing regulations do not provide for a time frame within which the USCIS must adjudicate I-485 applications, the APA requires that the applications be processed in a reasonable time. See 5 U.S.C. § 555(b). Therefore, [plaintiff] has a clear, indisputable and nondiscretionary right to an adjudication of her application within a reasonable time."); Haidari v. Frazier, 2006 WL 3544922 at *4 (D.Minn. Dec. 8, 2006) (J. Frank) ("Plaintiffs have a clear right to have their applications adjudicated [and] Defendants have a non-discretionary duty to perform this adjudication within a reasonable time"). See also Belegradek v. Gonzales, 523 F.Supp.2d 1364, 1367 (N.D.Ga. 2007) ("[T]he INA imposes a non-discretionary duty on the Attorney General to adjudicate an application for adjustment of status. Because that statute does not contain a specific time requirement, the APA, 5 U.S.C. § 555(b), requires that the Attorney General act upon an application of adjustment of status within a "reasonable time."); Tang v. Chertoff, 493 F.Supp.2d 148, 154 (D.Mass.

In summary, where the FBI has a non-discretionary duty to complete background checks, and a naturalization application has not been decided within 120 days of the applicant's interview because the background checks have not been completed, the Court finds that Congress' provision for background checks does not precludes judicial review.

With regard to defendants' argument that plaintiffs have an alternative or adequate remedy, i.e. waiting, the Court also finds that such a claim lacks merit. This issue has been frequently addressed in the context of adjustment of status cases, but the Court finds the reasoning equally applicable to naturalization cases. "The injury that plaintiffs complain of is that they have been required to wait too long already. It would

---

2007) ("While it is undisputed that the substance of the Attorney General's decision is discretionary, he does not have the discretion to decide not to adjudicate at all." (citation omitted)); Ahmadi v. Chertoff, 522 F.Supp.2d 816, 818 (N.D.Tex. 2007) ("the regulations and the majority of court decisions make clear that immigration officials have a nondiscretionary duty to act on the application…Furthermore, 5 U.S.C. § 555(b) requires that the Government makes its decision 'within a reasonable time…'"); Yu v. Brown, 36 F.Supp.2d 922, 932 (D.N.M. 1999) ("Although neither [governing] statute specifies a time by which an adjudication should be made, we believe that by necessary implication the adjudication must occur within a reasonable time. A contrary position would permit the INS to delay indefinitely. Congress could not have intended to authorize potentially interminable delays."); Wang v. Chertoff, 2007 WL 4200672 at *3 (D.Ariz. Nov. 27, 2007) ("[t]he timing of the adjudication process is not a matter over which the USCIS has unfettered discretion. It has a duty to act within a reasonable time."); Liang v. Attorney General of the United States, 2007 WL 3225441 at *5 (N.D.Cal. Oct. 30, 2007) ("To accept Defendants' argument that timing is always a matter of discretion beyond the Court's power to intervene would enable them to avoid judicial review even of adjudications that were postponed indefinitely. This would eviscerate § 706(1) of the APA, which clearly gives the Court the power to "compel agency action ... unreasonably delayed."); Song v. Klapakas, 2007 WL 1101283 at *3 (E.D.Pa. Apr. 12, 2007) (finding mandamus relief appropriate and stating that "USCIS has a non-discretionary duty to act on applications within a reasonable time"). The same logic applies with even more force in a naturalization case, where Congress has dictated that the adjudication of the application should be completed within 120 days of the interview.

be disingenuous to now conclude that because they could simply wait longer the court does not have jurisdiction." Sawad, 2007 WL 2973833 at *4; Sun, 2007 WL 2907993 at *4 (same). See also Singh v. Still, 470 F.Supp.2d 1064, 1071 (N.D.Cal. 2007) ("'Waiting for an agency to act cannot logically be an adequate alternative to an order compelling the agency to act.'") (quoting Fu v. Reno, 2000 WL 1644490 at *4 (N.D.Tex. November 1, 2000)); Tang v. Chertoff, 493 F.Supp.2d 148, 150 (D.Mass. 2007) ("The duty to act is no duty at all if the deadline is eternity."); Kim v. Ashcroft, 340 F.Supp.2d 384, 393 (S.D.N.Y. 2004) ("[T]he CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA."); Asrani v. Chertoff, 2007 WL 3521366 at *3 (D.Minn. Nov. 14, 2007) (finding that outside of seeking redress from the court, there is no adequate remedy where there was nothing in the record to allow the court to determine when plaintiff's name check would be returned or if it would be returned at all); Haidari v. Frazier, 2006 WL 3544922 at *5 (D.Minn. Dec. 8, 2006) ("Defendants miss the point. The question is whether the Plaintiffs have adequate, alternative means to address this very issue: the fact that they are still waiting.").

The Court also rejects defendants' contention that because no final agency action has been taken on plaintiffs' applications for naturalization, this Court cannot entertain this lawsuit. The APA defines agency action to include the failure to act. 5 U.S.C. § 551(13). Consequently, an "administrative agency cannot legitimately evade judicial review forever by continually postponing any consequence-laden action and then challenging federal jurisdiction on 'final agency action' grounds." Nat'l Parks Conservation Ass'n v. Norton, 324 F.3d 1229, 1239 (11th Cir. 2003). See also Sierra

Club v. Thomas, 828 F.2d 783, 793 (D.C.Cir. 1987) (to deem withholding of action as unreviewable would permit the agency to "forever evade our review"). Defendants' circuitous argument that this Court cannot review plaintiffs' claims that no decision has been made on their application because no decision has been made on their application, flies in the face of the APA's express directive that courts may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706. Clearly, the APA itself provides for review despite a lack of final agency action. Having found that adjudicating a naturalization application is an action that USCIS is required to take, and that USCIS in this case has failed to take that action, the Court can, under § 706, compel the agency action that is unreasonably delayed here.

Finally, the Court finds no merit to defendants contention that plaintiffs' suit should be dismissed because their claims are not ripe for review, and that they have not exhausted their administrative remedies. Defs. Mem., pp. 39, 44. Defendants submit that plaintiffs' claims are not ripe for review because the requisite background investigation has not been completed for plaintiff's application for naturalization. Defs. Mem., p. 40. This argument is premised on defendants' reasoning that no final agency action has been taken in plaintiff's case. Defs. Mem., pp. 41-42. However, as discussed above, the Court finds that CIS's inaction for over two years to be reviewable, and applies the same reasoning to the ripeness analysis.

"In determining whether a claim is ripe for adjudication, the Court weighs three factors: (1) the probability that the harm alleged by plaintiff will occur; (2) the sufficiency of the factual record to produce a fair adjudication of the merits; and (3) the hardship to the plaintiff if judicial relief is denied at this stage in the proceedings." Totonchi v.

Gonzales, 2007 WL 2331937 at *4 (N.D.Ohio Aug. 13, 2007) (citing Adult Video Ass'n. v. U.S. Dept. of Justice, 71 F.3d 563, 568 (6th Cir. 1995)).

First, the harm alleged by the plaintiffs is substantial. Plaintiffs cannot vote, obtain certain government jobs, petition for family members to join them in the United States, obtain citizenship for children born abroad, become an elected official, or travel freely. Pls. Mem., p. 11.

Second, the factual record is sufficiently developed to allow for adjudication. Plaintiffs have provided with the Court with detailed documentation regarding their claims, and both parties have briefed the issue extensively.

Third, plaintiffs will bear hardship if judicial review is denied at this stage of the proceedings. Barring a decision on their applications, plaintiffs have absolutely no other options at this point to challenge CIS's delay in adjudicating their applications. "[T]he danger posed by non-reviewability is the 'unfettered discretion to relegate aliens to a state of 'limbo' leaving them to languish there indefinitely.'" Duan v. Zamberry, 2007 WL 626116 at *4 (W.D.Pa. Feb. 23, 2007) (quoting Kim v. Ashcroft, 340 F.Supp.2d 384, 393 (S.D.N.Y. 2004)). Given the facts of this case, and that plaintiffs have no other avenue of relief to pursue, this case is ripe for review by this Court.

With respect to defendants' exhaustion of remedies argument, in order for plaintiffs to exhaust their administrative remedies, they require a decision on their applications. As discussed above ad nauseum, the entire point of plaintiffs' case is that there is no decision. In this case, plaintiffs have done all they could do to move their applications along. Since their interviews, they have made written inquiries to the DHS, have attended Infopass appointments at the local District Office to inquire about the

status of their cases, written their Congress members, Senators, and various Government officials, and have filed FOIA requests. Complaint, ¶ 6. They have pursued all avenues before bringing suit. Exhaustion does not preclude the Court from exercising jurisdiction over this case. See Haidari, 2006 WL 3544922 at *5 (finding that defendants' argument that plaintiffs had not exhausted their administrative remedies missed the point where plaintiffs had made extensive efforts to try to speed up the adjudication process).

In conclusion, plaintiffs have established a clear and indisputable right to have their applications adjudicated within 120 days of their respective interviews, defendants have a nondiscretionary duty to honor that right, and plaintiffs have no other adequate remedy. On this basis, the Court finds that the Mandamus Act and the APA provide a valid basis for subject matter jurisdiction. Therefore, this Court recommends that defendants' motion to dismiss for lack of subject matter jurisdiction be denied.

## RECOMMENDATION

For the reasons set forth above, it is recommended that Defendants' Motion to Dismiss be denied.

Dated: February 19, 2008

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties on or before **March 3, 2008** a copy of this Report, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.